| THIBODEAUX, Judge.
Oscar Gray, an employee of Premier Staffing, sustained a work-related injury *342 on May 28,1996. As a result of the injury, he was paid temporary total disability benefits and received medical treatment. In April of 1998, Premier Staffing discontinued the payment of benefits, claiming that Gray’s vocational rehabilitation counselor had identified jobs which were suitable for him. Subsequently, Gray brought suit against Premier Staffing, seeking the reinstatement of benefits. |2FolIowing a trial on the merits, the workers’ compensation judge reinstated Gray’s benefits, retroactive to the date of termination, and awarded penalties in the amount of $2,000.00 and attorney fees in the amount of $2,000.00. Premier Staffing appeals. For the reasons which follow, we affirm.
I.

ISSUES

We shall consider:
1) whether Gray is entitled to a reinstatement of his temporary total disability benefits, and
2) whether Gray is entitled to an award of penalties and attorney fees.
II.

FACTS

Oscar Gray was employed as a laborer by Premier Staffing. On May 28, 1996, he sustained injuries to his ankle and knee while working in the course of his employment. Subsequently, Premier Staffing began paying Gray temporary total disability benefits. Gray’s physician, Dr. Louis Blanda, released him from his care in September of 1997. Dr. Blanda diagnosed Gray with a ten percent permanent partial disability of the knee and advised him not to perform repetitive squatting or climbing.
Following Gray’s release from Dr. Blan-da, Scott Landry, an employee of Concen-tra Managed Care, Inc. (hereinafter “Con-centra”), began vocational rehabilitation efforts. Landry testified that he docu-ménted Gray's personal and job history and administered achievement tests. Landry found that Gray’s reading and arithmetic abilities were at a fourth grade level and that he had performed mostly | ^manual labor in the past. He noted Gray’s speech was difficult to understand at times and that Gray needed instruction in proper grooming. Landry explained that because Gray could not return to his previous position with Premier Staffing or to a modified position with Premier Staffing, he began looking for positions Gray could perform in his geographic area, New Iberia.
Landry testified that he searched for jobs that were unskilled, entry level, and which only required light to medium duty work. He identified three jobs, two unarmed security guard positions and one position as a cashier at a fast food restaurant. Although each position was located in New Iberia, one of the positions required Gray to apply in Lafayette. On April 27, 1998, Gray was informed of the openings and was later sent a written description of each position. Landry testified he sent the job descriptions to Dr. Blanda for his approval; however, Dr. Blanda failed to respond as he had not been paid for his services.
On May 4,1998, Landry sent a progress report to Premier Staffing’s claims administrator. The report indicated that Landry had identified three positions within Gray’s geographic area and that Gray had been informed of the openings. Susan Brewer, the claims examiner, testified that Gray’s benefits were terminated on May 7, 1998, when she received the report.
Landry testified that on May 8, 1998, Gray’s niece informed him that Gray had lost the written job descriptions which Landry had sent to him. On that same day, Landry delivered a copy of the report to Gray. On May 25, 1998, Landry identified two short order cook positions which were available, and he added those positions to the list he had provided to Gray.
*343 Gray testified that he applied for the cashier position on May 21, 1998, but was told that the position was not available. Likewise, Landry testified that ^Gray’s counsel informed him that the other positions he had identified were no longer available. In June of 1998, Landry transported Gray to a potential employer, but was told that the position he had identified previously had already been filled.
Landry ended his employment with Concentra at the end of June of 1998. Dawn Esposito, another employee at Con-centra, testified that she began working on Gray’s case in August of 1998. She stated that she contacted the potential employers that Landry had previously identified to determine whether Gray had applied for the positions. Additionally, a week before trial, Esposito updated the labor market survey and added seven positions to the list.
III.

LAW AND ARGUMENT

Standard of Review
An appellate court may not set aside the factual findings of a workers’ compensation judge in the absence of manifest error or unless it is clearly wrong. Wackenhut Corrections Corp. v. Bradley, 96-796 (La.App. 3 Cir. 12/26/96); 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. “Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong.” Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97); 696 So.2d 551, 556.
Temporary Total Disability
Premier Staffing contends that the workers’ compensation judge was manifestly erroneous in reinstating Gray’s temporary total disability benefits. It|fiargues that Gray is no longer entitled to receive benefits as he was provided meaningful and sufficient vocational rehabilitation. It emphasizes that Landry identified several job openings in New Iberia which were suitable for Gray. In response to Gray’s contention that he was unable to secure employment with any of the identified employers because he was incapable of performing the job duties, Premier Staffing contends that Gray was unable to obtain any of the jobs because he did not apply for them immediately.
The workers’ compensation judge found that Gray was entitled to a reinstatement of his benefits because he had not received sufficient vocational rehabilitation. In his reasons for judgment, the judge emphasized that Gray had cooperated fully with Landry in his rehabilitation efforts and noted that Gray failed to apply immediately for certain jobs due to a lack of transportation. The judge also stated that Premier Staffing failed to demonstrate that Landry had identified jobs which were suitable for Gray. He noted that Dr. Blan-da had not approved of any of the jobs and that Landry admitted it would be difficult for Gray to obtain employment due to his background.
An employee who suffers a com-pensable injury which precludes him from earning wages equal to those earned prior to the injury is entitled to prompt rehabilitation services. La.R.S. 23:1226(A). The goal of rehabilitation is “ to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs.” La.R.S. 23:1226(B)(1). In furtherance of this goal, La.R.S. 23:1226(B)(1) lists the following hierarchy of seven rehabilitation options and mandates that the first appropriate option shall be chosen:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant’s education and marketable skills.
*344 lfi(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
Moreover, as recognized by the Louisiana Supreme Court in Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993), job availability means more than job possibilities. “Rather, the employer must consider all factors which limit the employee’s real access to the job market.” Hickman v. Allstate Timber Co., 94-1275, p. 4 (La.App. 3 Cir. 4/5/95); 653 So.2d 154, 156, writ denied, 95-1133 (La.6/23/95); 656 So.2d 1017. These factors include an employee’s physical restrictions, literacy, race, age, and the ability to perform. Pinkins, 619 So.2d 52.
In this case, we find that the workers’ compensation judge was correct in concluding that Gray has not received sufficient vocational rehabilitation. Landry testified that because Gray could not return to his previous position with Premier Staffing or to a modified position with Premier Staffing, he began looking for other positions in New Iberia. He stated that he identified several job openings, including unarmed security guard positions, a cashier position at a fast food restaurant, and a position as a short order cook. However, he acknowledged that it would be difficult for Gray to obtain employment due to his background. He also admitted that he had not received approval of any of the positions from Dr. Blanda. Considering these circumstances, we find that the record supports the workers’ compensation judge’s factual finding that the jobs identified by Landry were not suitable for Gray.
We reject Premier Staffing’s argument that Gray’s benefits should be terminated because Gray has not cooperated with the rehabilitation efforts. Premier Staffing emphasizes that Gray did not apply for any of the job openings identified by Landry until approximately three weeks after he was notified of their existence. J^However, Gray testified that he had difficulty getting transportation to the potential employers. He explained that because he could not get a ride, he had to walk to one of the potential employers. Landry testified that he believed Gray’s transportation problem was legitimate and stated that Gray had always cooperated with his rehabilitation efforts. We conclude that the workers’ compensation judge’s finding that Gray cooperated with the rehabilitation efforts is not clearly wrong. Indeed, it is clearly correct and proper.
Penalties and Attorney Fees
Premier Staffing contends that Gray is not entitled to an award of $2,000.00 in penalties because it reasonably controverted his right to benefits. It also contests the award of $2,000.00 in attorney fees to Gray. Premier Staffing explains that benefits were discontinued a week after Gray had been notified of the first three employment opportunities identified by Landry. It asserts that in discontinuing Gray’s benefits, the claims examiner relied upon a progress report prepared by Landry which indicated that three job openings were found in New Iberia and that Gray had been informed by telephone of the openings.
Louisiana Revised Statutes 23:1201 provides for the imposition of penalties against an employer or its insurer where benefits are not paid timely and are not reasonably controverted. Louisiana Revised Statutes 23:1201.2 awards attorney fees where an employer or its insurer discontinues benefits arbitrarily, capriciously, or without probable cause. The workers’ compensation judge has great discretion in the award of penalties and attorney fees, and his decision will not be disturbed unless it is clearly wrong. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir. 1993).
*345 lain this case, when Gray’s benefits were terminated, the positions identified by Landry had not been approved by Dr. Blanda. Landry testified that Dr. Blan-da’s report was necessary in order for him to do his job of rehabilitation and job placement. Landry asserted that although he sent a progress report to the claims adjustor, he never reported that his rehabilitation efforts were completed. Moreover, after Landry left Concentra in June of 1998, no action was taken to continue job placement until the end of August of 1998. Landry’s successor, Esposito, failed to identify additional job openings until a week before the trial. The workers’ compensation judge aptly observed that this amounted to “sham rehabilitation” and was “an attempt to impress [the] Court with job availability” on the eve of the trial. In light of these circumstances, we find that the workers’ compensation judge correctly awarded penalties and attorney fees to Gray.
IV.

CONCLUSION

Based on the foregoing reasons, the judgment of the workers’ compensation judge is affirmed. Costs of the appeal are assessed to Premier Staffing.
AFFIRMED.